1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialatttorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Suite 800
   Newport Beach, CA 92660
5  Telephone: (949)706-6464

6  Attorney for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  DOMINICK MARTIN, an individual,        Case No.  8:22-CV-00410-CJC (KESx)

12         Plaintiff,                       **NOTICE OF MOTION AND MOTION
                                            TO REMAND; MEMORANDUM OF
13         v.                               POINTS AND AUTHORITIES**

14  THE CONTAINER STORE, INC., a            [Declarations of VaShaun Jones and Scott
    Texas corporation; and DOES 1-10,       J. Ferrell and Request for Judicial Notice
15  inclusive,                              filed concurrently herewith]

16         Defendants.                      Date:  May 16, 2022
                                            Time: 1:30 p.m.
17                                          Ctrm:  9B
                                            Judge: Hon. Cormac J. Carney
18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 16, 2022, at 1:30 p.m., or as soon thereafter as counsel may be heard in Courtroom 9B of the United States District Court for the Central District of California, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, CA, 92701-4516, the Honorable Cormac J. Carney, United States District Judge, presiding, Plaintiff Dominick Martin ("Plaintiff") will and hereby does move to remand this action to the Superior Court of California for the County of Orange.

Plaintiff moves to remand on the grounds that the action does not arise under the laws of the United States, the amount in controversy is insufficient to warrant removal on diversity grounds, and the action is not otherwise within the removal jurisdiction of this Court.   28 U.S.C. §§ 1332(a), 1441(a).

This motion is made pursuant to 28 U.S.C. § 1447(c).  This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declarations of VaShaun Jones and Scott J. Ferrell, Request for Judicial Notice, the pleadings and papers on file in this action, and upon such further evidence and argument as may be presented before or at the time of hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 14, 2022.

Dated:  April 15, 2022

PACIFIC TRIAL ATTORNEYS
A Professional Corporation

By: _/s/Scott J. Ferrell_
Scott J. Ferrell
Attorney for Plaintiff

-- 1 --

PLAINTIFF'S MOTION TO REMAND

# **TABLE OF CONTENTS**

I. ARGUMENT .................................................................................. iii

   A. Applicable Law ................................................................1

   B. Plaintiff Concedes That There Is Diversity of Citizenship Between the Parties. ............................................................3

   C. Defendant Has Failed to Satisfy Its Burden of Proof to Show that the Exception to the General Rule Applies Under the Preponderance of the Evidence Standard.......................3

      1. The Complaint Only Seeks Statutory Damages. ........3

      2. The Court Should Refuse to Consider Plaintiff's Attorneys' Fees Because Defendant Has Made No Attempt to Make Even a Conservative Estimate Using "Summary-Judgment-Type Evidence". ......................6

         a. *Engel v. Worthington* Is Distinguishable..........7

         b. *Antoninetti v. Chipotle Mexican Grill, Inc.* Is Distinguishable. ..................................................9

         c. *Baracco v. Brooks Brothers Group, Inc.* Is Directly on Point and Persuasive...................10

         d. *Davis v. BMI/BNB Travelware Co.* Is Directly on Point and Persuasive. .................................11

      3. Defendant Has Failed to Reasonably Calculate the Cost of Injunctive Relief by a Preponderance of the Evidence.......................................................11

         a. The Prayer for Relief Limits the Cost of Injunctive Relief Sought. ...............................11

         b. The Scope of Remediation Sought Is Defined by the Complaint, Which Alleges Certain Barriers Only....................................................14

         c. Given that Defendant Denies that Any Barriers Exist on Its Website, Its Remediation Costs Will Surely Be Minimal at Best. ...................15

| | | d. | Defendant Has Failed to Address the Cost to Hire an Outside Vendor to Remediate the Website to Remove the Specific Barriers Alleged in the Complaint................................16 |
| | | e. | A Well Known Vendor Offers an Accessibility Service for Commercial Websites at a Mere Fraction of Defendant's Injunctive Relief Cost Estimate. ...........................................19 |
| | | f. | *Rodriguez v. Foot Locker Corporate Servs., Inc.* Is Distinguishable. ....................................19 |
| | | g. | *Baracco v. Brooks Brothers Group, Inc.* Supports Plaintiff's Position...........................21 |
| | | h. | A Website Remediation Vendor Has Estimated that the Remediation Cost Shall Be Well Under $20,000. ..........................................22 |
| | | i. | The Finding in *Gil v. Winn-Dixie Stores, Inc.* Is Significant.......................................23 |
| | | j. | The U.S. Department of Justice Has Provided Guidance Indicating that Remediating Websites Is Not Especially Costs..................................23 |
| | 4. | | Contrary to the Notice of Removal, Costs Are Not Factored Into the Amount in Controversy Calculation. ...................................................................23 |
| II. | CONCLUSION | | ...........................................................................24 |

PLAINTIFF'S MOTION TO REMAND

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Andrews v. Blick Art Materials, LLC*,
    268 F. Supp. 3d 381 (E.D.N.Y. 2017) ................................................................14

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
    49 F. Supp. 3d 710 (S.D. Cal. 2014)..........................................................7, 9, 10

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
    643 F.3d 1165 (9th Cir. 2010) ...............................................................................9

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
    No. 06-CV-02671-BTM-JLB (S.D. Cal. filed Dec. 6, 2006) ...............................9

*Antonio v. Central Florida Inv., Inc.*,
    2016 WL 4267941 (C.D. Cal. Aug. 11, 2016) ...................................... 1, 2, 7, 18

*Arias v. Residence Inn by Marriott*,
    936 F.3d 920 (9th Cir. 2019) .................................................................................5

*Asher v. Raytheon Techs. Corp.*,
    2020 WL 3529817 (N.D. Ind. June 30, 2020) ....................................................13

*Avila v. Con-Way Freight, Inc.*,
    2012 WL 12887771 (C.D. Cal. May 18, 2012) (Carney, J.) .............................18

*Baracco v. Brooks Brothers Group, Inc.*,
    2019 WL 276840 (C.D. Cal. Jan. 22, 2019) (Gutierrez, J.)...................... *passim*

*Blood v. Equifax, Inc.*,
    2018 WL 36736960 (C.D. Cal. July 30, 2018).....................................................1

*Botosan v. Paul McNally Realty*,
    216 F.3d 827 (9th Cir. 2000) .............................................................................3, 4

*Burns v. Windsor Ins. Co.*,
    31 F.3d 1092 (11th Cir. 1994) ..............................................................................3

*Cabanillas v. Select Portfolio Servicing, Inc.*,
    2016 WL 1600827 (C.D. Cal. Apr. 20, 2016) (Snyder, J.) ................................18

*Carstarphen v. Deutsche Bank Nat'l Trust Co.*,
  2009 WL 1537861 (S.D. Ala. June 1, 2009) .................................................13

*Castillo v. ABM Indus., Inc.*,
  2017 WL 5609791 (C.D. Cal. Nov. 20, 2017) (Birotte, J.) ................................5

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  574 U.S. 81 (2014).......................................................................................2, 3

*Diaz v. Taskrabbit, Inc.*,
  No. 1:19-cv-00071-JPO, Doc. 15 ¶ 12 (S.D.N.Y. Apr. 26, 2019) ....................16

*Duncan v. Stuetzle*,
  76 F.3d 1480 (9th Cir. 1996) .............................................................................1

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
  899 F.3d 785 (9th Cir. 2018) ...........................................................................6

*Garcia v. Lifetime Brands, Inc.*,
  2016 WL 81473 (C.D. Cal. Jan. 7, 2016) .....................................................3, 22

*Gaus v. Miles, Inc.*,
  980 F.2d 564 (9th Cir. 1992) (per curiam) ......................................... 1, 2, 16, 18

*Gil v. Winn-Dixie Stores, Inc.*,
  257 F. Supp. 3d 1340 (S.D. Fla. 2017), *vacated on other grounds*, 993
  F.3d 1266 (11th Cir. 2021), *vacated*, 21 F.4th 775 (11th Cir. Dec. 28,
  2021) ...............................................................................................................23

*Gomez v. General Nutrition Corp.*,
  323 F. Supp. 3d 1368 (S.D. Fla. 2018) ............................................................14

*Grant v. Nunez*,
  2011 WL 3022532 (C.D. Cal. July 20, 2011) (Snyder, J.) ...............................18

*Guglielmino v. McKee Foods Corp.*,
  506 F.3d 696 (9th Cir. 2007) ............................................................................6

*Gunn v. Minton*,
  568 U.S. 251 (2013)...........................................................................................1

*Haynes v. Hooters of Amer., LLC*,
  893 F.3d 781 (11th Cir. 2018) .........................................................................14

*Hernandez v. Towne Park, Ltd.*,
   2012 WL 2373372 (C.D. Cal. June 22, 2012) (Morrow, J.)..................................6

*Hubbard v. Rite Aid Corp.*,
   433 F. Supp. 2d 1150 (S.D. Cal. 2006)...........................................................4

*Hubbard v. Twin Oaks Health and Rehabilitation Center*,
   408 F. Supp. 2d 923 (E.D. Cal. 2004) ...........................................................4

*Hunter v. Philip Morris USA*,
   582 F.3d 1039 (9th Cir. 2009) .......................................................................1

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ........................................................ 2, 3, 17, 18

*In re Ford Motor Co./Citibank (So. Dakota), N.A.*,
   264 F.3d 952 (9th Cir. 2001) .......................................................................11

*Johnson v. Wells Fargo Home Mortgage*,
   2012 WL 1229880 (C.D. Cal. Apr. 11, 2012) (Feess, J.)..................................18

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994).....................................................................................1

*Lowdermilk v. United States Bank Nat'l Ass'n*,
   479 F.3d 994 (9th Cir. 2007) .......................................................................18

*Martinez v. CotN Wash, Inc.*,
   2020 WL 6799076 (C.D. Cal. Nov. 18, 2020) (Phillips, J.)..............................16

*Martinez v. Johnson & Johnson Consumer Inc.*,
   471 F. Supp. 3d 1003 (C.D. Cal. 2020) (Klausner, J.) .....................................16

*Matheson v. Progressive Specialty Ins. Co.*,
   319 F.3d 1089 (9th Cir. 2003) .......................................................................2

*Mejico v. Online Labels, Inc.*,
   2019 WL 3060819 (C.D. Cal. July 12, 2019)..............................................4, 18

*Occupy Denver v. City and County of Denver*,
   2011 WL 6096501 (D. Colo. Dec. 7, 2011) ........................................ 13, 15, 21

*Oliver v. Ralphs Grocery Co.*,
   654 F.3d 903 (9th Cir. 2011) ........................................... 14, 15, 20, 21

*Perkins, et al. v. Chipotle Mexican Grill, Inc.*,
  No. 08-cv-3002 (C.D. Cal. filed May 7, 2008)..................................................9, 10

*Pettingill v. Scottsdale Ins. Group*,
  2008 WL 200011 (E.D. La. Jan. 18, 2008)..........................................................16

*Rangel v. Bridgestone Retail Operations, LLC*,
  200 F. Supp. 3d 1024 (C.D. Cal. 2016) ........................................................17, 18

*Reyes v. Staples Office Superstore, LLC*,
  2019 WL 4187847 (C.D. Cal. Sept. 3, 2019) (Carney, J.) ........................ *passim*

*Rios v. Wirepath Home Systems, LLC*,
  No. 8:19-cv-01921-JLS-KES, 2019 WL 6715044 (C.D. Cal. Dec. 10,
  2019) (Staton, J.)...................................................................................................23

*Robles v. Domino's Pizza LLC*,
  No. 2:16-cv-06599-JGB-E, 2021 WL 2945562 (C.D. Cal. June 23,
  2021) .......................................................................................................................5

*Rodriguez v. Foot Locker Corporate Servs., Inc.*,
  2020 WL 6818448 (C.D. Cal. Nov. 20, 2020) (Fitzgerald, J.)............. 19, 20, 21

*Romsa v. Ikea U.S. W., Inc.*,
  2014 WL 4273265 (C.D. Cal., Aug. 28, 2014) (Morrow, J.) ...........................18

*Sabine v. Aaron Brothers, Inc.*,
  2017 WL 7806596 (C.D. Cal. July 11, 2017)....................................................18

*Sanchez v. Monumental Life Ins. Co.*,
  102 F.3d 398 (9th Cir. 1996) ...............................................................................2

*Sasso v. Noble Utah Long Beach, LLC*,
  2015 WL 898468 (C.D. Cal. Mar. 3, 2015) (Birotte, J.) .....................................6

*Surber v. Reliance Nat. Indem. Co.*,
  110 F. Supp. 2d 1227 (N.D. Cal. 2000)................................................................7

*Townsend v. Brinderson Corp.*,
  2015 WL 3970172 (C.D. Cal. June 30, 2015) ......................................................3

*U.S. Bank Nat'l Ass'n v. Azam*,
  2013 WL 12130577 (C.D. Cal. Apr. 30, 2013) ....................................................1

*United States v. County of Riverside, Cal.*,
　　2015 WL 5898276 (C.D. Cal. Oct. 9, 2015) (Anderson, J.) ............................. 16

*Valdez v. Allstate Ins. Co.*,
　　372 F.3d 1115 (9th Cir. 2004) .......................................................................... 6, 7

*Vergara v. Wells Fargo Bank, N.A.*,
　　2015 WL 1240421 (C.D. Cal. Mar. 17, 2015) ..................................................... 2

*Vogel v. Rite Aid Corp.*,
　　992 F. Supp. 2d 998 (C.D. Cal. 2014) ................................................................. 4

*Zavala v. Wells Fargo Bank N.A.*,
　　2015 WL 3745041 (C.D. Cal. June 12, 2015) ................................................... 1, 2

**California Cases**

*Davis v. BMI/BNB Travelware Company dba Colorado Bag'n Baggage*,
　　No. CIVDS1504682, 2016 WL 2935482, at *1 (Cal. Super. Ct. San
　　Bernardino Cty. Mar. 21, 2016) ..................................................................... 5, 11

*Davis v. BMI/BNB Travelware Co.*,
　　No. CIVDS1504682, 2016 WL 11004309 (Cal. Super. Ct. San
　　Bernardino Cty. June 24, 2016) ........................................................................ 11

*Donald v. Café Royale, Inc.*,
　　218 Cal. App. 3d 168 (1990) .............................................................................. 4

*Engel v. Worthington*,
　　60 Cal. App. 4th 628 (1997) ...................................................................... 7, 8, 10

*Koire v. Metro Car Wash*,
　　40 Cal. 3d 24 (1985) .......................................................................................... 4

*Martinez v. San Diego County Credit Union*,
　　50 Cal. App. 5th 1048 (2020) ........................................................................... 14

*Thurston v. Midvale Corporation*,
　　No. BC663214, 2018 WL 6990623 (L.A. Super. Ct. May 21, 2018),
　　*aff'd*, *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 252 Cal. Rptr.
　　3d 292 (Cal. Ct. App. 2019) ............................................................................... 5

PLAINTIFF'S MOTION TO REMAND

**Federal Statutes**

28 U.S.C.
  § 1332(a) ..............................................................................2
  § 1332(c) ..............................................................................3
  § 1446(c)(2) ..................................................................1, 2, 3

42 U.S.C.
  § 12182(b)(2)(A)(iii) ..........................................................12

ADA ...................................................................... 12, 14, 15, 23

**Federal Regulations**

28 C.F.R. § 36.303(a) ..............................................................12

28 C.F.R. § 36.303(c)(1) ...................................................12, 15

**California Statutes**

Civil Code
  § 51 ......................................................................................4
  § 52 ...................................................................................4, 8
  § 52(a) ..................................................................................3
  § 55.56(d) .............................................................................5
  Unruh Act........................................................................ *passim*

**Federal Rules**

Rule 8 ..............................................................................14, 15

**Other Authorities**

"Guidance on Web Accessibility and the ADA" published on March 18,
  2022 via the United States Department of Justice's official U.S.
  government website at https://beta.ada.gov/web-guidance/ (last visited
  Apr. 15, 2022) ......................................................................14

News Release (testimony of Principal Deputy Assistant Attorney General
  for Civil Rights, Samuel R. Bagenstos, before the House Subcommittee
  on Constitution, Civil Rights and Civil Liberties), 2010 WL 1634981
  (Apr. 22, 2010)......................................................................23

Web Content Accessibility Guidelines ......................................14
  2.0.........................................................................................14

2.0, AA ................................................................................................................14
2.1 .............................................................................................................14, 19
2.1 AA ..............................................................................................................14

PLAINTIFF'S MOTION TO REMAND

1    I.      ARGUMENT

2           A.      Applicable Law

3           "'Federal courts are courts of limited jurisdiction,' possessing 'only that power

4    authorized by Constitution and statute.'"  *Gunn v. Minton*, 568 U.S. 251, 256 (2013)

5    (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).

6    "Courts 'strictly construe the removal statute against removal jurisdiction,' and 'the

7    defendant ***always*** has the burden of establishing that removal is proper.'"  *Antonio v.*

8    *Central Florida Inv., Inc.*, 2016 WL 4267941, at *2 (C.D. Cal. Aug. 11, 2016) (emphasis

9    added) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam)).

10   "[T]here is a '***strong presumption***' against removal jurisdiction," *Zavala v. Wells Fargo*

11   *Bank N.A.*, 2015 WL 3745041, at *2 (C.D. Cal. June 12, 2015) (quoting *Gaus*, 980 F.2d

12   at 566) (emphasis added), which means that "the court resolves ***all*** ambiguity in favor of

13   remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009)

14   (emphasis added).  "[F]ederal jurisdiction 'must be rejected if there is ***any doubt*** as to the

15   right of removal in the first instance.'" *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir.

16   1996) (emphasis added) (quoting *Gaus*, 980 F.2d at 566) (citation omitted)).  "When a

17   state-court complaint affirmatively alleges that the amount in controversy is less than the

18   jurisdictional threshold, the party seeking removal must prove with legal certainty that

19   the jurisdictional amount is met." *Blood v. Equifax, Inc.*, 2018 WL 36736960, at *3 (C.D.

20   Cal. July 30, 2018) (quoting *U.S. Bank Nat'l Ass'n v. Azam*, 2013 WL 12130577, at *2

21   (C.D. Cal. Apr. 30, 2013)).

22          "If removal of a civil action is sought on the basis of the jurisdiction conferred by

23   the sum demanded in good faith in the initial pleading shall be deemed to be the amount

24   in controversy, except that--

25                 (A) the notice of removal may assert the amount in controversy if the initial

26   pleading seeks--

27                 (i) nonmonetary relief; or

28

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."

28 U.S.C. § 1446(c)(2).   Thus, if the defendant's amount in controversy allegation is either contested by the plaintiff or questioned by the court, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).

"Under this [preponderance of the evidence] burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." *Vergara v. Wells Fargo Bank, N.A.*, 2015 WL 1240421, at *1 (C.D. Cal. Mar. 17, 2015) (quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996)); *Zavala v. Wells Fargo Bank N.A.*, 2015 WL 3745041, at *1 (C.D. Cal. June 12, 2015) (Staton, J.) ("On a motion to remand, the Court 'consider[s] facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"); *see also Gaus*, 980 F.2d at 567 (holding that the party seeking removal must overcome "the 'strong presumption' against removal jurisdiction" by "setting forth, in the removal petition itself, the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000].").   "Conclusory allegations as to the amount in controversy are insufficient." *Antonio*, 2016 WL 4267941, at *2 (citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003)).   "Nor can a defendant establish the amount in controversy by 'mere speculation and conjecture.'" *Antonio*, 2016 WL 4267941, at *2 (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

"[N]either *Dart Cherokee* nor [*Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193 (9th Cir. 2015)] mandate that a plaintiff must always submit evidence challenging the amount in controversy." *Garcia v. Lifetime Brands, Inc.*, 2016 WL 81473, at *4 (C.D. Cal. Jan. 7, 2016) (quoting *Townsend v. Brinderson Corp.*, 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015) (citing cases)). "'Numerous cases after *Dart Cherokee* have concluded, either explicitly or implicitly, that while a plaintiff *may* rebut defendant's evidence with his or her own evidence, he or she need not do so in order to pre vail on a motion to remand.'" *Garcia*, 2016 WL 81473, at *4 (emphasis in original) (quoting *Townsend*, 2015 WL 3970172, at *3).

### B.   Plaintiff Concedes That There Is Diversity of Citizenship Between the Parties.

Plaintiff concedes that there is diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332(c). Plaintiff only challenges whether Defendant has satisfied the amount in controversy requirement of diversity jurisdiction, which is necessary for removal jurisdiction to exist, as addressed below.

### C.   Defendant Has Failed to Satisfy Its Burden of Proof to Show that the Exception to the General Rule Applies Under the Preponderance of the Evidence Standard.

If a plaintiff's express claim is limited to less than the minimum jurisdictional sum, the defendant's "**burden of proof [to prove that jurisdiction exists] must be a *heavy one***." *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994) (emphasis added). Defendant has failed to satisfy its burden of proof to show that the exception to the general rule applies under the preponderance of the evidence standard. 28 U.S.C. § 1446(c)(2).

### 1.   The Complaint Only Seeks Statutory Damages.

Plaintiff sets forth one cause of action based exclusively upon California law and seeks statutory minimum damages pursuant thereto (*i.e.*, not actual damages). (Compl. ¶¶ 21-28; Cal. Civ. Code § 52(a).) As the Ninth Circuit long ago explained, "The statute

[*i.e.*, Civil Code § 52] lists actual damages and statutory damages as two separate categories of damages that a plaintiff may recover. Therefore, proof of actual damages is not a prerequisite to recovery of statutory minimum damages." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) (citing *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 33 (1985) (stating that the Unruh Act "provides for [statutory] damages aside from any actual damages incurred by the plaintiff") ("Section 52 [of the California Civil Code] provides for minimum statutory damages . . . for *every* violation of section 51, *regardless* of the plaintiff's actual damages.") (emphasis in original)); *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1014 (C.D. Cal. 2014) ("Proof of actual damages is not a prerequisite to the recovery of statutory minimum damages.") (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1170 (S.D. Cal. 2006) (citing *Botosan*)).

"To recover statutory damages, a plaintiff need only show that he was denied full and equal access, ***not that he was wholly excluded from enjoying defendant's services***." *Vogel*, 992 F. Supp. 2d at 1014 (emphasis added) (citing *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d at 1170); *Hubbard v. Twin Oaks Health and Rehabilitation Center*, 408 F. Supp. 2d 923, 932 (E.D. Cal. 2004); *Donald v. Café Royale, Inc.*, 218 Cal. App. 3d 168, 182 (1990) (holding that "the separate and limited accommodations for dining at [the defendant's restaurant] for the physically handicapped did not constitute equal access" because at best, "only 4, or possibly 5, of the 26 tables in the restaurant were accessible to the physically handicapped," but "[t]hese tables were located in the lower level lounge area, separate from the two raised tiers of the main dining area," such that "[t]he able-bodied patrons were afforded the ambience of dining on raised tiers, while wheelchair-confined patrons were relegated to an area in the bar adjacent to the piano").

As such, the Court should consider the minimum statutory damages of $4,000 sought in the Complaint for purposes of determining the amount in controversy. *See Mejico v. Online Labels, Inc.*, 2019 WL 3060819, at *2 (C.D. Cal. July 12, 2019).

Indeed, as far as Plaintiff is aware, in the only three contested website accessibility cases in which statutory damages were awarded pursuant to the Unruh Act, the plaintiffs

received a $4,000 statutory damages recovery.  *See Robles v. Domino's Pizza LLC*, No. 2:16-cv-06599-JGB-E, 2021 WL 2945562, at *10 (C.D. Cal. June 23, 2021) (finding that "Plaintiff is due $4000 in Unruh Act penalties"); *Thurston v. Midvale Corporation,* No. BC663214, 2018 WL 6990623, at *3 (L.A. Super. Ct. May 21, 2018), *aff'd*, *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634, 252 Cal. Rptr. 3d 292 (Cal. Ct. App. 2019); *Davis v. BMI/BNB Travelware Company dba Colorado Bag'n Baggage*, No. CIVDS1504682, 2016 WL 2935482, at *1 (Cal. Super. Ct. San Bernardino Cty. Mar. 21, 2016).

As the Ninth Circuit has noted, "the amount in controversy reflects the *maximum* recovery the plaintiff could ***reasonably*** recover."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (second emphasis added).  And, this Court has applied a "conservative estimate" of damages in evaluating the amount in controversy.  *Castillo v. ABM Indus., Inc.*, 2017 WL 5609791, at *3 (C.D. Cal. Nov. 20, 2017) (Birotte, J.).  Given the limited case authority that exists in which courts have awarded statutory damages under the Unruh Act in cases involving alleged website barriers, it is ***unreasonable*** to expect the California Superior Court to award more than $4,000 in statutory damages to Plaintiff upon remand of this action.  Although a court, in theory, might potentially award an additional $4,000 in regards to a specific, deterred visit "on a particular occasion," (Cal. Civ. Code § 55.56(d)), to Plaintiff's knowledge, ***no court has thus far awarded such additional statutory damages based upon even a single deterred visit to a website***.

Significantly, the Complaint at issue does not seek any actual damages, which is precisely why the Complaint ***does*** expressly seek instead statutory minimum damages as an alternative remedy.

Defendant's contention that "Plaintiff's complaint seeks $60,000 in damages," (Notice of Removal at 6:4-5), is not only inaccurate, it ignores the crucial question as to the maximum recovery of statutory damages that Plaintiff could "reasonably recover." *Arias*, 936 F.3d at 927.

The bottom line is that Defendant has not met its burden in establishing that a statutory damages award of more than $4,000 is likely in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.     The Court Should Refuse to Consider Plaintiff's Attorneys' Fees Because Defendant Has Made No Attempt to Make Even a Conservative Estimate Using "Summary-Judgment-Type Evidence".**

Defendant's Notice of Removal makes no attempt to estimate the specific attorneys' fees that can reasonably be anticipated in Plaintiff's favor in this particular case.  As such, the Court should reject consideration of Plaintiff's attorneys' fees in calculating the amount in controversy.

In *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held therein that "[a] district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy ***if the defendant fails to satisfy [its] burden of proof***."  *Id.* at 795 (emphasis added).  Indeed, in *Reyes v. Staples Office Superstore, LLC*, 2019 WL 4187847 (C.D. Cal. Sept. 3, 2019) (Carney, J.), the Court noted that "courts should still reject a defendant's calculation of future attorneys' fees if it fails to satisfy its burden of proof using 'summary-judgment-type evidence.'"  *Id.* at *5 (citing *Fritsch*).

As the Court has noted, "[C]alculations [of attorney's fees] should be ***conservative estimates***."  *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (Birotte, J.) (emphasis added) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007)); *Reyes*, 2019 WL 4187847, at *5 ("[C]alculations of attorneys' fees should be '***conservative estimates***.'") (emphasis added).

Simply put, Defendant failed to satisfy its burden of proof by making no attempt to include a specific, ***conservative*** estimate of future attorneys' fees in the amount in controversy via Defendant's Notice of Removal based upon "summary-judgment-type evidence." *See Reyes*, 2019 WL 4187847, at *5; *see also Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, at *20 (C.D. Cal. June 22, 2012) (Morrow, J.) ("Given the Ninth Circuit's direction that the removing party produce 'summary-judgment-type evidence' showing that the amount in controversy requirement is met, *Valdez v. Allstate Ins. Co.*,

1   372 F.3d 1115, 1117 (9th Cir. 2004), the court concludes that defendants have not

2   adduced adequate proof of the amount of attorneys' fees that should be used to calculate

3   the amount in controversy.  Therefore, ***the court declines to consider [plaintiff's] prayer***

4   ***for attorneys' fees in determining the amount in controversy***.") (emphasis added).

5       Indeed, in *Antonio v. Central Florida Inv., Inc.*, 2016 WL 4267941 (C.D. Cal. Aug.

6   11, 2016) (Staton, J.), the Court held:

7       "Plaintiffs' complaint seeks punitive damages and attorneys' fees. . . . This is

8       insufficient to satisfy Defendants' burden of proof.  All Defendants have done is

9       point out that Plaintiffs have demanded punitive damages and attorneys' fees and

10      assumed on that basis that the amount in controversy exceeds the jurisdictional

11      amount. Where, as here, the defendant fails to offer any evidence of the potential

12      punitive damages or attorneys' fees, the amount in controversy requirement is not

13      satisfied."

14  *Id.* at *3 (citing *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D.

15  Cal. 2000)) (refusing to add attorneys' fees and punitive damages to the amount in

16  controversy where the defendant failed to offer any evidence as to their amount).

17      Although Defendant relies solely upon two decisions in its Notice of Removal in

18  support, *Engel v. Worthington*, 60 Cal. App. 4th 628, 635-36 (1997); *Antoninetti v.*

19  *Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 714, 725 (S.D. Cal. 2014), which are

20  analyzed below, those two decisions do not constitute "summary-judgment-type

21  evidence," as required to satisfy Defendant's evidentiary burden.

22      Because Defendant has failed to calculate Plaintiff's future attorneys' fees based

23  upon "summary-judgment-type evidence," as required, *Reyes*, 2019 WL 4187847, at *5

24  (Carney, J.), the Court should reject consideration of any attorneys' fees from its

25  calculation of the amount in controversy.

26          **a.   *Engel v. Worthington* Is Distinguishable.**

27      Assuming *arguendo* that the Court treats *Engel v. Worthington*, 60 Cal. App. 4th

28  628, 635-36 (1997), as the equivalent of "summary-judgment-type evidence," *Reyes*,

2019 WL 4187847, at *5, such decision is not helpful because it did not involve a case addressing the issue of website accessibility, which is the sole issue raised as accessibility barriers in the instant action. (Compl. ¶ 18; Doc. 1-1 at pg. 9 of 21; Page ID #17.) *Engel* involved a dispute over the defendant's refusal to include a photograph of the plaintiff and his male companion in a high school reunion yearbook that the defendant produced. *Engel*, 60 Cal. App. 4th at 628.

Moreover, a close review of *Engel* reveals that that decision did not affirm the award of any attorneys' fees by the trial court, which found that the plaintiff was not entitled to *any* fees, *Engel*, 60 Cal. App. 4th at 635, ***nor did the Court of Appeal order an award of any specific amount of attorneys' fees***. *Id.* at 635-37. *Engel* stated, "We . . . remand the matter to the trial court to ***determine*** the amount of fees to be awarded to Engel." *Id.* at 635. Thus, the Court of Appeal did not make its own finding as to what specific amount of fees should be awarded to the plaintiff therein. At best, the Court of Appeal in *Engel* stated that "we note Engel ***may well be*** entitled to every penny of the requested fee award." 60 Cal. App. 4th at 635 (emphasis added). But, *Engel* then instructed the trial court as follows: "The court shall set a hearing ***to determine*** Engel's Civil Code section 52 attorney fees in light of the opinions expressed herein." *Id.* at 636 (emphasis added). If *Engel* determined that the $80,875 in attorney fees requested by the plaintiff was reasonable, then why did the Court of Appeal repeatedly instruct the trial court to "to determine" the amount of the fee award? Thus, the Notice of Removal's characterization of *Engel* as "finding $80,857 in attorneys' fees for recovering $250 in Unruh damages to be reasonable in 1997," (Notice of Removal at 6:15-17), is highly misleading, inaccurate, and simply wrong. The precise amount of attorneys' fees awarded by the trial court upon the reversal in *Engel* cannot be gleaned from *Engel*.

Finally, assuming *arguendo* that the trial court awarded $80,875 to the plaintiff following the reversal, Defendant conveniently ignores that *Engel* noted that the plaintiff had litigated his case for ***10 years***. *Id.* at 636 ("He has spent ***the last 10 years*** seeking to enforce a statutory right.") (emphasis added). An estimate of future attorneys' fees

litigating an Unruh Act claim for 10 years cannot even remotely be viewed as a "conservative estimate". *Reyes*, 2019 WL 4187847, at \*5 ("[C]alculations of attorneys' fees should be '***conservative estimates***.'") (emphasis added).

### b.   *Antoninetti   v.   Chipotle   Mexican   Grill,   Inc.*   **Is Distinguishable.**

Assuming *arguendo* that the Court treats *Antoninetti v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 710, 714, 725 (S.D. Cal. 2014), as the equivalent of "summary-judgment-type evidence," *Reyes*, 2019 WL 4187847, at \*5, such decision is not helpful because it did not involve a case addressing the issue of website accessibility.  Instead, *Antoninetti* involved the claims of mobility-impaired individuals who use a wheelchair. *Antoninetti*, 49 F. Supp. 3d at 713 n.1 (referring to the Ninth Circuit opinion in *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1169-71 (9th Cir. 2010), for a factual summary); 643 F.3d at 1169 ("Antoninetti is a paraplegic who uses a wheelchair for mobility.").

And, a close review of *Antoninetti* reveals that that decision addressed a motion for attorneys' fees regarding ***multiple putative class actions*** pursuant to a global settlement agreement.  *Antoninetti*, 49 F. Supp. 3d at 714 ("The pending motion addresses ***only*** heretofore uncompensated fees and costs for work on ***the putative class actions*** pursuant to the settlement agreement.") (emphasis added).  As explained in *Antoninetti*:

"8.   Class certification was denied[ in *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06-CV-02671-BTM-JLB (S.D. Cal. filed Dec. 6, 2006).]   The parties thereafter negotiated a global settlement of the individual claims in this class action, in the Perkins class action,[1] and in ***fifteen additional individual suits***, all of which were consolidated before this Court.  More specifically, the individual

---

[1] The "Perkins class action" is a reference to *Perkins, et al. v. Chipotle Mexican Grill, Inc.*, No. 08-cv-3002 (C.D. Cal. filed May 7, 2008), which was "a second class action [in the Central District of California that] was filed by plaintiffs residing out of [the Southern District of California] who were represented by the same counsel as those litigating [in *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06-CV-02671-BTM-JLB (S.D. Cal. filed Dec. 6, 2006)]."  *Antoninetti*, 49 F. Supp. 3d at 713-14.

plaintiffs in state court cases were added to the *Antoninetti* class action, and the *Perkins* case was transferred and consolidated with *Antoninetti* on December 3, 2013.  (Order Consolidating Cases, No. 06-2671, December 3, 2013 (Doc. 187).)

9.     Under the global settlement agreement, Chipotle Mexican Grill, Inc. ("Chipotle" or "Defendant") agreed to pay Plaintiffs' reasonable attorneys' fees and costs in all of these related cases.  (Doc. 182, Ex. A ¶¶ 2.1.C.1, 2.1.C.6.)

. . .

11.     The **twenty-one named plaintiffs** collectively recovered $225,000 in damages for their individual claims."

*Antoninetti*, 49 F. Supp. 3d at 714 (emphasis added).  The plaintiffs' counsel in *Antoninetti* sought compensation for "2,033.2 hours of work."  *Id.* at 719.  In addition, the court in *Antoninetti* expressly awarded time of "approximately 77 hours" "spent on class certification".  *Id.* at 720 ("The Court finds . . . approximately 77 hours . . . spent on class certification to be reasonable and includes it in the lodestar.").

Needless to say, the instant action involves a straightforward individual action commenced by an individual plaintiff on his own behalf only.  (Compl. ¶ 7; Doc. 1-1 at pg. 6 of 21; Page ID #14.)  In addition,  the court in *Antoninetti* expressly adopted a $400 hourly rate for the two specific attorneys whose reasonable hourly rates were determined in that decision.  *Antoninetti*, 49 F. Supp. 3d at 718.  In contrast, Defendant has made no attempt to show that a comparable rate should be applied here for Plaintiff's counsel in the instant action.

Thus, comparing *Engel* and *Antoninetti* to the instant action based upon the mere overlap that they all involve the Unruh Act is a superficial analysis akin to comparing apples to oranges.

<h3>c.     <em>Baracco v. Brooks Brothers Group, Inc.</em> Is Directly on Point and Persuasive.</h3>

In *Baracco v. Brooks Brothers Group, Inc.*, 2019 WL 276840, at *4 (C.D. Cal. Jan. 22, 2019) (Gutierrez, J.), the Court recently found it "unlikely that attorneys' fees in a

case with similar allegations would amount to over $25,001." *Id.*  *Baracco* is directly on point because it similarly involved a claim brought by a legally blind individual under the Unruh Act regarding the inaccessibility of a website. *Id.* at *1.  Needless to say, assuming that the Court estimated the number of hours to litigate the case through trial as no more than 100 hours, that means that the Court applied a modest hourly rate of approximately $250/hour.

### d. *Davis v. BMI/BNB Travelware Co.* Is Directly on Point and Persuasive.

Defendant conveniently ignores that in *Davis v. BMI/BNB Travelware Co.*, No. CIVDS1504682, 2016 WL 11004309 (Cal. Super. Ct. San Bernardino Cty. June 24, 2016), the California Superior Court awarded only $38,818.75 in attorneys' fees to a prevailing plaintiff who had sued in a similar Unruh Act case involving a merchant's website accessibility in which ***Plaintiff's counsel and their law firm served as plaintiff's counsel therein***. *Id.* at *1; *Davis v. BMI/BNB Travelware Co.*, No. CIVDS1504682, 2016 WL 2935482, at *1 (San Bernardino Super. Ct. Mar. 21, 2016).  The foregoing shows that Defendant's reliance upon two decisions cited in Defendant's Notice of Removal is misplaced as they are not "conservative estimates" consistent with what this Court has previously held as the applicable requirement.  *Reyes*, 2019 WL 4187847, at *5 ("[C]alculations of attorneys' fees should be '***conservative estimates***.'") (emphasis added).

### 3. Defendant Has Failed to Reasonably Calculate the Cost of Injunctive Relief by a Preponderance of the Evidence.

"In the Ninth Circuit, the value of the injunction for purposes of determining the amount in controversy may be assessed from 'either viewpoint,' that is, the amount that either party can gain or lose from the case." *Baracco v. Brooks Brothers Group, Inc.*, 2019 WL 276840, at *3 (C.D. Cal. Jan. 22, 2019) (Gutierrez, J.) (citing *In re Ford Motor Co./Citibank (So. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001)).

### a. The Prayer for Relief Limits the Cost of Injunctive Relief

**Sought.**

As an initial matter, the prayer for relief in the Complaint "expressly limits the injunctive relief to require that Defendant expend no more than $20,000 as the cost of injunctive relief[.]"  (Compl. at 10:1-2; Doc. 1-1 at pg. 12 of 21; Page ID #20.)  The monetary cap on the injunctive relief sought is significant on the merits.  The applicable ADA statute provides that "discrimination includes . . . a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an ***undue burden***."  42 U.S.C. § 12182(b)(2)(A)(iii) (emphasis added).  The ADA regulation promulgated by the U.S. Department of Justice regarding auxiliary aids and services, in turn, states:

> "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty ***or expense***."

28 C.F.R. § 36.303(a) (emphasis added); 28 C.F.R. § 36.303(c)(1) ("A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities.").  Notably, Defendant has set forth "Undue Burden" as its eighth affirmative defense in its Answer.  (Answer at 7:19-24; Doc. 8; Page ID #51.)  Thus, it is Plaintiff's prerogative to request auxiliary aids and services that would cost a limited amount for the public accommodation to provide so that it does not impose a significant expense.  Here, Plaintiff has chosen that amount to be a maximum of $20,000.

Plaintiff is the master of his complaint with respect to the injunctive relief sought therein, which is within Plaintiff's control.  *Asher v. Raytheon Techs. Corp.*, 2020 WL 3529817, at *4 (N.D. Ind. June 30, 2020).  In *Asher*, the district court explained:

> "As master of their Complaint, Plaintiffs are allowed to pick their poisons; they are entitled to their forum of choice and ***to frame the*** nature of their claims ***and requested relief***. That is precisely what the Plaintiffs have done here. But, Plaintiffs must be wary; this ability to shun federal claims and remain in state court can be perilous. If, as Defendants aggressively argue, the Plaintiffs are wrong that they may seek and obtain injunctive relief for their state law claims, ***they risk not obtaining all the relief they believe would make them whole***. This, however, is something to be wrestled with through the state court process, not in federal court where no federal issue has been raised on the face of the well-pleaded complaint."

*Id.* at *4 (emphasis added).

Similarly, in *Occupy Denver v. City and County of Denver*, 2011 WL 6096501 (D. Colo. Dec. 7, 2011), the district court explained:

> "The plaintiffs are the masters of their complaint, their motion, their claims, ***the bases on which they seek injunctive relief***, and the parties and the parties against whom they seek such relief. ***Injunctive relief may be awarded based only on the claim and grounds asserted in the complaint*** and  motion."

*Id.* at *3 (emphasis added).  And, in *Carstarphen v. Deutsche Bank Nat'l Trust Co.*, 2009 WL 1537861, at *2 n.12 (S.D. Ala. June 1, 2009), the district court noted that "plaintiff is the master of her Complaint, and this Court cannot rewrite the pleadings in its jurisdictional inquiry to correct any perceived discrepancies or aberrations, much less to insert a jurisdictional foothold that is otherwise lacking."  *Asher*, *Occupy Denver*, and *Carstarphen* stand for the proposition that a plaintiff gets to decide the scope of the relief requested in his or her action including injunctive relief.  If a plaintiff makes a decision to seek injunctive relief that does not make him or her whole, that is a risk that a plaintiff bears.  It is not a reason to allow a defendant to hijack the requested relief sought by a

1  plaintiff into something far broader, costly, and intrusive in order to manufacture the

2  appearance of federal jurisdiction.

3          **b.       The Scope of Remediation Sought Is Defined by the**

4                    **Complaint, Which Alleges Certain Barriers Only.**

5          Defendant's Notice of Removal contends, "It is reasonable to infer from these

6  allegations that Plaintiff is seeking an injunction that would require TCS to maintain its

7  *entire* website [at the domain name of https://www.containerstore.com (the "Website")]

8  in compliance with the WCAG 2.1 AA guidelines and that it is not limited to only those

9  barriers identified in Plaintiff's Complaint."[2]  (Notice of Removal at 4:8-11) (emphasis

10 added).  Defendant's Notice of Removal ignores, however, the Ninth Circuit's binding

11 precedent in *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 909 (9th Cir. 2011), which held:

12         "In sum, for purposes of Rule 8, a plaintiff must identify the barriers that constitute

13         the grounds for a claim of discrimination under the ADA *in the complaint itself*; a

14         defendant is not deemed to have fair notice of barriers identified elsewhere.

15         Therefore, the district court did not err in refusing to consider the barriers that

16         Oliver identified only in his expert report."

17 ───────────────────────

18 [2] In *Haynes v. Hooters of Amer., LLC*, 893 F.3d 781 (11th Cir. 2018), the Eleventh Circuit characterized WCAG 2.0 as "the recognized industry standard for website accessibility."

19 *Id.* at 783; *Gomez v. General Nutrition Corp.*, 323 F. Supp. 3d 1368, 1379 n.3 (S.D. Fla. 2018) (stating that "the Court finds *highly* persuasive the number of cases adopting WCAG 2.0 Success Level AA as the appropriate standard to measure accessibility");

20 *Martinez v. San Diego County Credit Union*, 50 Cal. App. 5th 1048, 1074 (2020) (stating that the WCAG are "the online industry's current accessibility standards").   Most

21 recently, on March 18, 2022, the DOJ published on its official government website written guidance on web accessibility and the ADA at https://beta.ada.gov/web-guidance/

22 (last visited Apr. 15, 2022).  Such document is entitled, "Guidance on Web Accessibility and the ADA" ("Guidance").   The DOJ's Guidance states in relevant part:

23         "Existing technical standards provide helpful guidance concerning how to ensure
           accessibility of website features.   These include the <u>Web Content Accessibility</u>

24         <u>Guidelines (WCAG)</u> and the <u>Section 508 Standards</u>, which the federal government
           uses for its own websites."

25 (Guidance on Web Accessibility and the ADA at 5 of 9) (emphasis in original).  Thus, the DOJ has characterized the WCAG guidelines as providing technical standards for

26 website accessibility.  "WCAG 2.1 is designed to be 'backwards compatible' so websites that conform to WCAG 2.1 will also conform to WCAG 2.0."  *Andrews v. Blick Art*

27 *Materials, LLC*, 268 F. Supp. 3d 381, 383 (E.D.N.Y. 2017).   "The new guidelines' primary focus will be on accessibility for those with low vision and learning disabilities,

28 as well as increasing mobile access."  *Id.*  "As of now, it does not appear that WCAG 2.1 will require substantial changes from WCAG 2.0."  *Id.*

*Oliver*, 654 F.3d at 909 (emphasis added).  Given that Plaintiff has not amended the operative Complaint, the alleged barriers set forth in paragraph 18 of the Complaint identify the relevant scope of remediation sought by Plaintiff.[3]  Defendant's attempt to suggest otherwise is simply wrong as a matter of law.  Defendant's lead counsel should be familiar with the holding in *Oliver* given that he served as defense counsel in *Oliver*. *See Oliver*, 654 F.3d at 904.

> **c.** **Given that Defendant Denies that Any Barriers Exist on Its Website, Its Remediation Costs Will Surely Be Minimal at Best.**

Defendant's Answer denies the existence of any of the alleged barriers set forth in paragraph 18 of the Complaint.  (Compl. ¶ 18; Answer ¶ 18.)  In addition, Defendant's twentieth affirmative defense alleges the existence of effective communication.  (Answer ¶ 20) ("Plaintiff's claims are barred because Defendant provided effective communication.").  In other words, Defendant denies that there is any violation of the effective communication requirement of the ADA set forth in 28 C.F.R. § 36.303(c)(1) ("A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure ***effective communication*** with individuals with disabilities.") (emphasis added).  If Defendant's position is either accurate or close in accuracy, then surely Defendant's remediation costs shall surely be de minimis.  Thus, Defendant cannot reconcile its position denying the existence of any communication barriers hindering blind persons in the use of its website with its remediation cost estimate baldly claiming that "the injunctive relief sought by Plaintiff exceeds $75,000."  (Notice of Removal at

---

[3] The Complaint merely identifies at most seven types of communication barriers on the Website: (1) missing alternative text; (2) spacer image missing alternative text; (3) empty or missing form labels; (4) multiple form labels; (5) empty headings; (6) empty buttons; and (7) empty links.  (Compl. ¶ 18.)  That matters.  *Oliver*, 654 F.3d at 909 ("for purposes of Rule 8 [of the Federal Rules of Civil Procedure], a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA ***in the complaint itself***; a defendant is not deemed to have fair notice of barriers identified elsewhere") (emphasis added); *Occupy Denver*, 2011 WL 6096501, at *3 ("***Injunctive relief may be awarded based only on the claim and grounds asserted in the complaint*** and motion.") (emphasis added).

3:27; Doc. 1 at pg. 4 of 8; Page ID #4.)

### d. Defendant Has Failed to Address the Cost to Hire an Outside Vendor to Remediate the Website to Remove the Specific Barriers Alleged in the Complaint.

Defendant's Notice of Removal is entirely conclusory in estimating the cost of the injunctive relief sought by Plaintiff. (Notice of Removal at 3:27-28; 4:23-5:8.) Such contentions are unsubstantiated via summary judgment style of evidence. "[A]rguments of counsel and counsel's subjective belief are not enough to defeat remand . . . ." *Pettingill v. Scottsdale Ins. Group*, 2008 WL 200011, at *2 (E.D. La. Jan. 18, 2008).

Defendant was required to set forth in the removal petition itself the underlying facts supporting its assertion. *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992) (the party seeking removal must overcome "the 'strong presumption' against removal jurisdiction" by "setting forth, *in the removal petition itself*, the underlying facts supporting its assertion that the amount in controversy exceeds [$75,000].") (emphasis added).

Defendant fails to address the extent to which Defendant is relying upon a specific estimate by an outside vendor regarding a cost estimate to evaluate, remediate, and monitor[4] its Website based upon the alleged communication barriers mentioned in the Complaint. (Compl. ¶ 18.) This matters. *See Martinez v. Johnson & Johnson Consumer Inc.*, 471 F. Supp. 3d 1003, 1009 (C.D. Cal. 2020) (Klausner, J.) ("Defendant does not appear to have consulted with a vendor as to the costs of updating the website."). Indeed, in *Martinez v. CotN Wash, Inc.*, 2020 WL 6799076, at *3 (C.D. Cal. Nov. 18, 2020) (Phillips, J.), the Court granted a similar motion to remand because the defendant's cost estimates for injunctive relief in a website barrier case "do not consider the *specific access barriers* that would need to be changed on Defendant's website to make it accessible to the blind". *Id.* at *3 (emphasis added).

---

[4] Two years is an appropriate timeframe for injunctive relief. *Diaz v. Taskrabbit, Inc.*, No. 1:19-cv-00071-JPO, Doc. 15 ¶ 12 (S.D.N.Y. Apr. 26, 2019); *United States v. County of Riverside, Cal.*, 2015 WL 5898276, at *4 (C.D. Cal. Oct. 9, 2015) (Anderson, J.)

During the parties' meet and confer, which was conducted in writing, Plaintiff made the following specific request to Defendant via a letter dated April 14, 2022, as follows:

> "Please identify and produce for inspection the specific admissible evidence Defendant is relying upon to support its contention that the 'possible cost to . . . comply with the injunction Plaintiff seeks by way of his complaint could require TCS to expend significant human and monetary resources on an ongoing basis and which will well exceed Plaintiff's … $20,000 limitation and further exceeds the $75,000 jurisdictional minimum.'  (Notice of Removal at ¶ 18.)  In particular, please identify and produce for inspection the specific evidence Defendant is relying upon regarding any cost estimate from any third-party vendor who has made a remediation proposal regarding the specific barriers identified in the Complaint relating to Defendant's website at issue herein."

(Ferrell Decl. ¶ 2 & Ex. 1.)  Defendant failed to respond to Plaintiff's specific request at all with any production of documents or specific information beyond what is stated in the Notice of Removal.  *Id.* ¶ 3.  Thus, Defendant has completely avoided addressing the cost to hire an outside vendor to remediate its Website to eliminate the communication barriers contained therein.  *Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.").

Indeed, Defendant's Notice of Removal fails to cite any admissible evidence indicating that Defendant solicited even a single bid from any website remediation vendor regarding the specific cost to remediate the Website based upon the specific alleged barriers set forth in paragraph 18 of the Complaint or to monitor such Website in the future.  (Notice of Removal ¶¶ 14-18; Doc. 1.)  That omission speaks volumes because Defendant surely recognizes that such cost would be far below $75,001.

Given that Defendant has a heavy burden of proof to prove that diversity jurisdiction exists, *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1031 (C.D. Cal. 2016) ("The removing party therefore bears a heavy burden to rebut the

presumption against removal.") (citing *Gaus*, 980 F.2d at 566), Defendant's failure to carry its burden should require this Court to disregard Defendant's grossly exorbitant bald estimate as far too speculative to rely upon. *See Mejico v. Online Labels, Inc.*, 2019 WL 3060819, at *3 (C.D. Cal. July 12, 2019) (Wright, J.); *Antonio v. Central Florida Inv., Inc.*, No. 8:16-cv-1032-JLS-KESx, 2016 WL 4267941, at *3 (C.D. Cal. Aug. 11, 2016) (Staton, J.).  The bottom line is that Defendant offers purely speculative and conjectural alleged amounts in controversy that improperly "reflect a 'bold optimistic prediction' rather than a reasonable estimate of plaintiff's claims." *Sabine v. Aaron Brothers, Inc.*, 2017 WL 7806596, at *2 (C.D. Cal. July 11, 2017) (citing *Romsa v. Ikea U.S. W., Inc.*, 2014 WL 4273265, at *2 (C.D. Cal., Aug. 28, 2014) (Morrow, J.)); *Ibarra*, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, ***with unreasonable assumptions***.") (emphasis added); *Lowdermilk v. United States Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007) (holding that a court "cannot base [its] jurisdiction on a defendant's speculation and conjecture"); *Cabanillas v. Select Portfolio Servicing, Inc.*, 2016 WL 1600827, at *5 (C.D. Cal. Apr. 20, 2016) ("[T]hese arguments amount to nothing more than speculation.") (Snyder, J.) (quoting *Johnson v. Wells Fargo Home Mortgage*, 2012 WL 1229880, at *4 (C.D. Cal. Apr. 11, 2012) (Feess, J.) ("[T]hese arguments amount to nothing more than speculation. . . .")); *Avila v. Con-Way Freight, Inc.*, 2012 WL 12887771, at *2-*4 (C.D. Cal. May 18, 2012) (Carney, J.) (holding that the defendant's calculations of the amount in controversy were "completely unreliable");[5] *Grant v. Nunez*, 2011 WL 3022532, at *1 (C.D. Cal. July 20, 2011) (Snyder, J.) ("A speculative argument as to the amount in controversy is insufficient.") (citing *Gaus*, 880 F.2d at 567).

---

[5] The Court's emphasis regarding the need for a "reliable estimate" or "reliable calculation" was made clear in *Avila*. *Avila*, 2012 WL 12887771, at *3 ("reliable estimate") ("reliable calculation"); *id.* at *4 ("reliable, based-in-fact calculations"); ("reliable estimates").

  **e.**  **A Well Known Vendor Offers an Accessibility Service for Commercial Websites at a Mere Fraction of Defendant's Injunctive Relief Cost Estimate.**

Plaintiff's investigation has discovered vendors that purport to offer a service for website owners/operators interested in making their websites accessible to users purportedly in compliance with WCAG 2.1. For example, accessiBe Ltd., which does business as accessiBe, offers its customers/clients an overlay service for websites that purportedly eliminates website accessibility barriers and automatically scans such websites for accessibility barriers. (Ferrell Decl. ¶ 5.) According to accessiBe's website, accessiBe claims to work automatically and claims that "accessiBe is transforming web accessibility by streamlining the process to becoming compliant and accessible using state-of-the-art AI technology[.]" *Id.* According to accessiBe's website, accessiBe currently offers a yearly plan for "Standard" websites with under 1,000 unique pages for $490 per year. *Id.* & Ex. 2. AccessiBe currently offers a yearly plan for "Large" websites with under 10,000 unique pages for $1,490 per year. *Id.* AccessiBe currently offers a yearly plan for "Huge" websites with under 100,000 unique pages for $1,990 per year. *Id.* Thus, this constitutes strong evidence that Defendant has grossly exaggerated its estimate of the cost of the requested injunctive relief in this action.

  **f.**  ***Rodriguez v. Foot Locker Corporate Servs., Inc.* Is Distinguishable.**

Although Defendant relies upon *Rodriguez v. Foot Locker Corporate Servs., Inc.*, 2020 WL 6818448 (C.D. Cal. Nov. 20, 2020) (Fitzgerald, J.), in its Notice of Removal, (Notice of Removal at 5:8-13), *Rodriguez* is distinguishable.

Although the Court therein found that the cost of complying with the injunction requested by the plaintiff would likely exceed $75,000 and concluded that the amount-in-controversy requirement was satisfied, *Rodriguez*, 2020 WL 6818448, at *4, the Court relied upon the fact that the complaint therein expressly sought an injunction enjoying the defendants from further violations of the Unruh Act with respect to their website at

the domain name's home page "***and all of the webpages and urls contained therein***." *Id.* at *3 (emphasis added).  In addition, the Court noted that the complaint also sought an injunction requiring the defendants to take the steps necessary to make their website "readily and ***fully*** accessible to and usable by blind and visually impaired individuals." *Id.* (emphasis added).  In light of the specific allegations in the complaint therein, the Court held:

> "Because the relief requested in the Complaint is not limited to remedying the ***specific*** barriers listed in the Complaint, Defendant's declaration explaining the cost of bringing the ***entire website*** into compliance with the UCRA is sufficient to establish the overall cost of complying with the injunction."

*Id.* (emphasis added).

Unlike the complaint at issue in *Rodriguez*, the Complaint in the instant action does not similarly request injunctive relief to enjoin Defendant from further violations of the Unruh Act as to "all of the webpages and urls contained" in Defendant's Website. (Compl. at 9:26-10:2; Doc. 1-1 at pgs. 11-12 of 21; Page ID #19-#20.)  That distinction matters.  In addition, unlike the complaint at issue in *Rodriguez*, the Complaint in the instant action does not similarly request injunctive relief to require Defendant to take steps necessary to make Defendant's Website "fully accessible".  Instead, the Complaint in the instant action requests an injunction to make the Website "usable" by visually-impaired individuals.  (Compl. at 9:27.)  Needless to say, there is obviously a big difference between a website that is "fully accessible" and one that is merely "usable" by visually-impaired individuals.

In addition, the Court in *Rodriguez* did not consider the effect of *Oliver* upon the injunctive relief sought in that action.  In particular, if the plaintiff in *Rodriguez* failed to amend the complaint therein to allege the existence of accessibility barriers throughout the entire website, then how could that plaintiff obtain injunctive relief throughout the entire website as opposed to the specific webpages, which contained the barriers alleged in the complaint?  The Court's analysis and holding in *Rodriguez* erred by overlooking

*Oliver* and its direct impact on the scope of the barriers alleged to be violations of law in an Unruh Act action.

Furthermore, the Court in *Rodriguez* did not address the fact that "[t]he plaintiffs are the masters of . . . the bases on which they seek injunctive relief" and "***injunctive relief may be awarded based only on the claim and grounds asserted in the complaint*** and motion." *Occupy Denver*, 2011 WL 6096501, at *3 (emphasis added).

Finally, the Court in *Rodriguez* did not consider any of the evidence that Plaintiff has submitted here including the pricing information of any website remediation vendor such as accessiBe Ltd., (Ferrell Decl. ¶ 5 & Ex. 2), or any other vendor, (Jones Decl. ¶ 4 & Ex. 1).

### g. *Baracco v. Brooks Brothers Group, Inc.* Supports Plaintiff's Position.

The decision in *Baracco v. Brooks Brothers Group, Inc.*, 2019 WL 276840 (C.D. Cal. Jan. 22, 2019) (Gutierrez, J.), is instructive.  In *Baracco*, the plaintiff, who is legally blind, sued the defendant in California Superior Court under the Unruh Act because of the inaccessibility of the defendant's website.  The plaintiff stated in the complaint that he sought to limit the cost of injunctive relief to $15,000 or less.  *Id.* at *2.  The defendant removed the action to the federal district court based on diversity jurisdiction.  ***Although the defendant filed a declaration from its employee averring that it had engaged a third-party vendor to update its website to make its website more user-friendly for visually impaired individuals at a total price of over $150,000***, the district court held that the defendant had failed to provide "substantive evidence" of how much it would cost to implement the injunctive relief sought by the plaintiff to remediate the defendant's website.  *Id.* at *3.  The district court explained:

> "[T]he Court finds that this declaration is insufficient to show under the preponderance of evidence standard that the value of the injunction is 'far greater than $15,000.'  The declaration states only that an unknown portion of the vendor's work was devoted to updating the website to be more user-friendly to visually

impaired individuals. The Court cannot estimate, without any reasonable basis, how much of the $150,000 accounted for such work. ***It may very well be that the actual cost of making the website more accessible to visually impaired individuals accounted for only a small portion of the total amount***. And as Plaintiff correctly points out, '[h]ow much Defendant may have spent on its Website in the past has no bearing on the cost of remedying specific access barriers that are currently present on its Website.'

Although the Court does not doubt that an overhaul of a global retail website may cost a significant amount, ***without more substantive evidence of how much it would cost to implement the injunctive relief Plaintiff seeks***, the Court has no choice but to credit Plaintiff's limitation of $15,000 for the cost of injunctive relief."

*Baracco*, 2019 WL 276840, at *3 (internal citations omitted) (emphasis added).

*Baracco* lends strong support to Plaintiff's position because it shows that Defendant has failed to provide ***any*** substantive evidence of how much it would cost to implement the injunctive relief sought by Plaintiff via a third-party vendor.

### h.    A Website Remediation Vendor Has Estimated that the Remediation Cost Shall Be Well Under $20,000.

Plaintiff has offered competent evidence via the Declaration of VaShaun Jones dated April 14, 2022, the business owner of Fedora Outlier LLC ("Fedora Outlier"), that the remediation of Defendant's Website by an outside, third-party vendor should cost approximately $14,300. (Jones Decl. ¶ 4 & Ex. 1.)

Even if this Court disregards the Jones Declaration in its entirety, as the Court has previously noted, "'while a plaintiff *may* rebut defendant's evidence with his or her own evidence, he or she need not do so in order to prevail on a motion to remand.'" *Garcia v. Lifetime Brands, Inc.*, 2016 WL 81473, at *4 (C.D. Cal. Jan. 7, 2016) (Staton, J.) (emphasis in original) (citation omitted). Thus, Plaintiff can prevail on the instant Motion without rebutting Defendant's purported evidence.

i.      **The Finding in *Gil v. Winn-Dixie Stores, Inc.* Is Significant.**

In *Gil v. Winn-Dixie Stores, Inc.*, 257 F. Supp. 3d 1340 (S.D. Fla. 2017), *vacated on other grounds*, 993 F.3d 1266 (11th Cir. 2021), *vacated*, 21 F.4th 775 (11th Cir. Dec. 28, 2021), the district court made a factual finding that the plaintiff's accessibility expert testified at trial that his company could fix all of the problems on the defendant's commercial website for $37,000 or less.  *Id.* at 1347-48.

j.      **The U.S. Department of Justice Has Provided Guidance Indicating that Remediating Websites Is Not Especially Costs.**

The congressional testimony of Samuel R. Bagenstos, Principal Deputy Assistant Attorney General for Civil Rights, United States Department of Justice, before the House Subcommittee on Constitution, Civil Rights and Civil Liberties on April 22, 2010, is noteworthy:

> "Making websites accessible is neither difficult ***nor especially costly***, and in most cases providing accessibility will not result in changes to the format or appearance of a site."

*See* News Release (testimony of Principal Deputy Assistant Attorney General for Civil Rights, Samuel R. Bagenstos, before the House Subcommittee on Constitution, Civil Rights and Civil Liberties), 2010 WL 1634981 (Apr. 22, 2010) (emphasis added).  Thus, the Department of Justice, which is the government agency charged with enforcing the ADA, has publicly taken the position that making websites accessible is not "especially costly."

4.      **Contrary to the Notice of Removal, Costs Are Not Factored Into the Amount in Controversy Calculation.**

Although the Notice of Removal references the potential recovery of "costs," (Notice of Removal ¶ 13), as Defendant ought to know, costs are not factored into the amount in controversy calculation.  *See Rios v. Wirepath Home Systems, LLC*, No. 8:19-cv-01921-JLS-KES, 2019 WL 6715044, at *1 n.2 (C.D. Cal. Dec. 10, 2019) (Staton, J.).

1  **II.      CONCLUSION**

2          Based upon the foregoing, it is respectfully requested that the Court grant the

3  instant Motion and such other and further relief as it deems appropriate.

4

5  Dated:  April 15, 2022                     PACIFIC TRIAL ATTORNEYS
                                              A Professional Corporation
6
                                              By: _/s/Scott J. Ferrell_____
7                                             Scott J. Ferrell
                                              Attorney for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I electronically filed the foregoing **NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell*
Scott J. Ferrell